UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------x 25-cv-15129(EP)(JRA)

LAURA CIESLA,

                Plaintiff,

-against-

CITY OF NEWARK, NEW JERSEY,

                Defendant.

------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CITY OF NEWARK, NEW JERSEY**


**JOHN C. LUKE, JR.
ABRAMS FENSTERMAN LLP
3 DAKOTA DRIVE, SUITE 300
LAKE SUCCESS, N.Y. 11042
*ATTORNEYS FOR PLAINTIFF***

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................i

I.    INTRODUCTION & PROCEDURAL HISTORY..................................................... 1

II.   LEGAL ARGUMENT ............................................................................................. 2

   A.   Standard for Default Judgment .......................................................................... 2

   B.   Entry of Default Judgment Against Defendant Is Warranted............................. 3

      1.   Plaintiff Has Produced Sufficient Proof of Valid Service and Evidence of Jurisdiction with Respect to Defendant ................................................................. 3

      2.   The Unchallenged Facts Present a Sufficient Cause of Action...................... 3

         a.   Plaintiff Has Stated a Plausible Claim for Due Process Violations and Discrimination under Both the NJLAD and the Fourteenth Amendment.......................... 4

      3.   Entry of Default Judgment Against Defendant is "Proper" under the Circumstances    4

         a.   Plaintiff Will be Prejudiced if Default is Denied ....................................... 7

         b.   Defendant Does Not Have Meritorious Defenses........................................ 8

         c.   Defendant's Delay is Due to Culpable Conduct ......................................... 8

   C.   Damages and Amount of Judgment Requested ................................................. 9

      1.   Plaintiff's Sworn Declaration Supports Her Damages Calculation .......................... 9

      2.   Plaintiff's Damages Calculation and Judgment Request............................. 11

III.    CONCLUSION...................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

992 F.2d 168 (3d Cir. 1990) ............................................................................................ 8

Alvin v. Suzuki,
    227 F.3d 107 (3d Cir.2000)...................................................................................... 12

Amresco Fin. I L.P. v. Storti,
    2000 U.S. Dist. LEXIS 3103 (E.D. Pa. Mar. 10, 2000)......................................... 15

Andersen v. Exxon Co.,
    89 N.J. 483, 446 A.2d 486 (1982) ......................................................................... 10

Cleveland Bd. of Educ. v. Loudermill,
    470 U.S. 532 (1985) ............................................................................................... 13

Directv, Inc. v. Asher,
    2006 U.S. Dist. LEXIS 14027 (D.N.J. Mar. 14, 2006)........................................... 14

Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds,
    250 F.R.D. 171 (D.N.J. 2008).................................................................................. 9

Durant v. Husband,
    28 F.3d 12 (3d Cir. 1994)........................................................................................ 15

E. Elec. Corp. v. Shoemaker Constr. Co.,
    657 F. Supp. 2d 545 (E.D. Pa. 2009) ..................................................................... 15

Eastern Elec. Corp. v. Shoemaker Constr. Co.,
    652 F. Supp. 2d 599 (E.D. Pa. 2009) ...................................................................... 8

Emcasco Ins. Co. v. Sambrick,
    834 F.2d 71 (3d Cir. 1987)................................................................................... 9, 13

Hill v. Borough of Kutztown,
    455 F.3d 225 (3d Cir.2006)..................................................................................... 12

Joe Hand Promotions, Inc. v. Waldron,
    2013 U.S. Dist. LEXIS 34567 (D.N.J. Mar. 13, 2013)............................................ 9

Joe Hand Promotions, Inc. v. Waldron,
    2013 U.S. Dist. LEXIS 34567 (D.N.J. Mar. 13, 2013).......................................... 15

Joe Hand Promotions, Inc. v. Yakubets,
    3 F. Supp. 3d 261 ................................................................................................... 14

Johnson v. United States,
    375 F. App'x 273 (3d Cir. 2010) ............................................................................. 9

Jones v. Sch. Dist.,
    198 F.3d 403 (3d Cir.1999)..................................................................................... 10

Morton v. Beyer,
    822 F.2d 364 (3d Cir.1987)..................................................................................... 12

Mycone Dental Supply Co. v. Generic Mfg. Corp.,
    2023 U.S. Dist. LEXIS 94352 (D.N.J. May 31, 2023)............................................ 8

Olson v. General Electric Astrospace,
    966 F. Supp. 312 (D.N.J. 1997) ........................................................................ 10, 11

Rogers v. Alternative Res. Corp.,
    440 F.Supp.2d 366 (D.N.J.2006) ................................................................ 11
Russell v. Mimi's Café & Mkt.,
    2023 U.S. Dist. LEXIS 5549 (E.D. Pa. Jan. 9, 2023)................................... 15
WM Capital Partners XXXIV, LLC v. Bartholomew,
    2017 U.S. Dist. LEXIS 4572 (E.D. Pa. Jan. 12, 2017)................................ 14

Statutes

28 U.S.C. § 1331 ............................................................................................. 9
28 U.S.C. § 1367 ........................................................................................... 10
42 U.S.C. § 1983 ......................................................................................... 7, 9

Rules

Fed. R. Civ. P. 55 ............................................................................................. 8
Fed. R. Civ. P. 55(b)(2) ................................................................................... 8
Federal Rule of Civil Procedure 55(a) ............................................................. 8
N.J. Ct. R. 4:4-4(a)(6) ..................................................................................... 9

Other Authorities

Joe Hand Promotions, Inc.,
    2013 U.S. Dist. LEXIS 34567, at *12-13 .................................................. 14

Plaintiff, Laura Ciesla, by and through her undersigned counsel, submits this Memorandum of Law in support of her Motion for Default Judgment Against Defendant City of Newark, New Jersey ("Newark").

## I.    INTRODUCTION & PROCEDURAL HISTORY

On August 9, 2025, Plaintiff filed a Complaint against Defendant City of Newark, New Jersey ("Defendant") alleging that Defendant discriminated against her based on perceived disability and disability under the New Jersey Law Against Discrimination ("NJLAD"), wrongful termination/constructive discharge, and due process violations under 42 U.S.C. § 1983 as protected by the Fourteenth Amendment of the Constitution.

On November 5, 2025, copies of the Complaint and summons were personally served on Defendant. On November 14, 2025, Plaintiff filed the executed summons with the Court. Defendant's time to answer or move was due on or before November 26, 2025. Defendant did not respond.

On January 7, 2026, the Court Ordered that Plaintiff request a clerk's entry of default pursuant to Federal Rule of Civil Procedure 55(a). Plaintiff filed that request for a clerk's entry of default judgment on January 21, 2026.   Plaintiff refiled her request on February 6, 2026.   On February 6, 2026, the Clerk entered the judgment of default against Defendant and Plaintiff served her request for default with Defendant on February 6, 2026.  Defendant has not responded.

## II.     LEGAL ARGUMENT

### A.  Standard for Default Judgment

Pursuant to Federal Rules of Civil Procedure, a party is entitled to a judgment by default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." See Fed. R. Civ. P. 55. "Once the clerk of court has entered a default, the party seeking the default must then apply to the court for entry of a default judgment." Eastern Elec. Corp. v. Shoemaker Constr. Co., 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009); Fed. R. Civ. P. 55(b)(2) ("[T]he party entitled to a judgment by default shall apply to the Court therefore."). The court is then "authorized to enter a default judgment based solely on the fact that the default has occurred." Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 992 F.2d 168, 177 n.9 (3d Cir. 1990).

When deciding whether to award a default judgment, the district court must determine: "(1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a sufficient cause of action, and (3) whether the circumstances otherwise render the entry of default judgment 'proper.'" See Mycone Dental Supply Co. v. Generic Mfg. Corp., 2023 U.S. Dist. LEXIS 94352, at *4 (D.N.J. May 31, 2023) (internal citations omitted). In analyzing this third factor, courts generally consider: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987)). Nevertheless, some courts have recognized that this latter analysis, which was originally developed within the context of a late-appearing defendant's motion to set aside default judgment, is of perhaps less utility, and is easier for the moving party

2

to satisfy, when the defaulting party is completely absent from the proceedings. See e.g. Joe Hand Promotions, Inc. v. Waldron, 2013 U.S. Dist. LEXIS 34567, at *12-15 n.4 (D.N.J. Mar. 13, 2013); c.f. Johnson v. United States, 375 F. App'x 273, 275 (3d Cir. 2010) (referring to the Emcasco test as one "for granting relief from a default judgment").

### B. Entry of Default Judgment Against Defendant Is Warranted

### 1. Plaintiff Has Produced Sufficient Proof of Valid Service and Evidence of Jurisdiction with Respect to Defendant

As the Court acknowledged in its January 7, 2026, Order, Plaintiff effectuated service of process on Defendant by serving a copy of the complaint and summons at Defendant's office address at 920 Broad Street, Newark, N.J. 07102 on Tati Hidalgo on November 5, 2025. Accordingly, Plaintiff has clearly produced sufficient proof of valid service upon Defendant See N.J. Ct. R. 4:4-4(a)(6).

Similarly, as detailed in Plaintiff's Complaint, this Court has original subject matter jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under the NJLAD pursuant to 28 U.S.C. § 1367 because they arise out of the same nucleus of operative facts. See Compl., ¶¶ 6-9.

Accordingly, Plaintiff has produced sufficient proof of valid service and evidence of this Court's jurisdiction with respect to Defendant Newark.

### 2. The Unchallenged Facts Present a Sufficient Cause of Action

In her Complaint, Plaintiff plausibly asserts the following claims against Defendants: (a) Due Process violations (Counts I) and (b) perceived disability and disability under the NJLAD (Count II). See generally Compl.

3

**a. Plaintiff Has Stated a Plausible Claim for Due Process Violations and Discrimination under Both the NJLAD and the Fourteenth Amendment**

Plaintiff alleges that Newark violated the ADA when it terminated her and failed to promote her because of her disability. The elements for proving disability discrimination under the NJLAD are similar to that under the FMLA. Plaintiff must first establish that (1) she was disabled within the meaning of the statute; (2) she was qualified to perform the essential functions of the position of employment; and (3) she suffered an adverse employment action because of the disability. Each of these elements must be shown, including proof of some material adverse change in the terms and conditions of employment. Jones v. Sch. Dist., 198 F.3d 403, 411 (3d Cir.1999); New Jersey courts construing the NJLAD have repeatedly emphasized the NJLAD's broad remedial nature, mandating that it should be construed liberally. Olson v. General Electric Astrospace, 966 F. Supp. 312, 315 (D.N.J. 1997). New Jersey courts interpreting the statute have repeatedly emphasized that the NJLAD's definition of "disability" is not restricted to "severe" or "immutable" disabilities. Olson 966 F.Supp. 315 ; Andersen v. Exxon Co., 89 N.J. 483, 446 A.2d 486 (1982). Thus, substance abuse, obesity, breast cancer, and other conditions that are "demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques" have been accepted as disabilities under the LAD. Olson, 966 F. Supp. at 315.

Plaintiff was hospitalized with stress-induced anxiety on or about February 22, 2024. Plaintiff informed her supervisor Lt. Emil Cardona regarding her condition. Plaintiff was a decorated officer and was qualified for the position.  Shortly after her hospitalization, Defendant found Plaintiff unfit and forced her to resign her position.  Prior to her hospitalization, Plaintiff

4

was not in danger of termination.  In fact, during her time convalescing, she applied for a sergeant position.

In a failure to promote case, a plaintiff establishes a prima facie case by showing, by a preponderance of the evidence, that: "(1) she is within a protected class; (2) she sought and was qualified for the promotion; (3) she was rejected for the promotion; and (4) nonmembers of her protected class were treated more favorably-alternatively stated, that the promotion went to someone with equal or lesser qualifications who was not in the protected class." Rogers v. Alternative Res. Corp., 440 F.Supp.2d 366, 371 (D.N.J.2006).

Plaintiff had a mental health disability as recognized by the NJLAD.  On May 2,2024, Plaintiff applied for a promotion.   Plaintiff was a decorated officer and was qualified for the position.  Defendant ignored Plaintiff's initial application and the follow up on May 28, 2024. Defendant never responded to Plaintiff application.  This was yet another example of Defendant not following their own procedural guidelines when it involved Plaintiff.

To prevail on a procedural due process claim, a plaintiff must establish "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.' " Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir.2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.2000)).

The violation of her due process rights began on March 15, 2023, when Defendant as part of a random drug screening demanded a copy of her prescription which is against policy.  She was advised on multiple occasions that Defendant's internal affairs violated AG policy. By May of 2023, Plaintiff still had no idea about the charges against her despite providing five confidential medical documents. On Monday, May 8, 2023, Defendant confiscated Plaintiff's work computer.

5

At this point, Plaintiff had been back and forth in IAD with no indication of the charges against her. On or about June 8, 2023, Newark police applied for a subpoena to obtain Plaintiff's medical records.

Plaintiff was not presented with charges or a target letter. On June 8, 2023, Plaintiff visited 494 Broad Street to provide a statement.  To ensure that the pretermination hearing is a meaningful one, the employee 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.' " Morton v. Beyer, 822 F.2d 364, 368 (3d Cir.1987). During this meeting it was again revealed that Defendant's did not provide Plaintiff with a target letter or charges. On June 26, 2023, nearly four months after the accusations of fraud and manipulation, she was finally provided with charges.  On July 13, 2023, Plaintiff attended a police trial regarding the charges.  Plaintiff was in police trials for nearly three hours because the trial board did not review the discovery submitted in her case. She was not given an opportunity to defend herself against the charges.  Defendant did not follow its own progressive discipline matrix.

In or about November 2023, Defendant again randomly drug tested Plaintiff.  She was not notified of the positive test results and could not figure out why she was not notified.  As per AG Guidelines any officer that tests positive for any controlled substances prescribed or not are to be notified.  The stress of the constant investigations caused Plaintiff great stress and she was taken to Cooperman Barnabas Medical Center on or about February 22, 2024.  As per protocol Plaintiff booked off with stress.  While in the hospital Defendant sent detectives to interrogate Plaintiff.

Defendant found Plaintiff unfit for duty on July 31, 2024.   Plaintiff was afforded neither pre nor post termination administrative procedures prior to being forced from her employment. ("[P]rior to termination, a public employee with a property interest in continued employment[ ]

6

must be afforded 'a pretermination opportunity to respond, coupled with post-termination administrative [or judicial] procedures.' " Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547–48 (1985). Plaintiff intended to continue her career with Defendant. She applied for a sergeant position on May 2, 2024. She followed up with another communication regarding her submitted letter of intent to be interviewed for a sergeant position. Defendant never responded. Defendant never afforded Plaintiff any post termination administrative procedures to appeal the decision.

### 3. Entry of Default Judgment Against Defendant is "Proper" under the Circumstances

As an initial matter, although courts within the Third Circuit generally consider the three Emcasco factors when reviewing whether a default judgment is "proper," see Emcasco Ins. Co., 834 F.2d at 74, some courts have also recognized that this analysis may be less applicable where a defendant has entirely failed to appear in the case. See Joe Hand Promotions, Inc., 2013 U.S. Dist. LEXIS 34567, at *12-15 n.4. Nevertheless, each of these three (3) factors clearly favor entry of default judgment in this case.

### a. Plaintiff Will be Prejudiced if Default is Denied

Where a defendant "fails to answer the Complaint or otherwise appear," the plaintiff "suffers prejudice if it doesn't receive a default judgment because it has no alternative means of vindicating its claim against the defaulting parties." See Joe Hand Promotions, Inc., 2013 U.S. Dist. LEXIS 34567, at *12-13; see also Directv, Inc. v. Asher, 2006 U.S. Dist. LEXIS 14027, at *4 (D.N.J. Mar. 14, 2006).

This is precisely what has happened in this case, where Defendant failed to appear entirely, let alone engage in the litigation process. Accordingly, this factor weighs heavily in favor of entry of default judgment.

### b. Defendant Does Not Have Meritorious Defenses

Because "Defendant have not entered an appearance or filed a response to the Complaint," the Court may presume that no "meritorious defense" exists to Plaintiff's claims. See WM Capital Partners XXXIV, LLC v. Bartholomew, 2017 U.S. Dist. LEXIS 4572, at *35 (E.D. Pa. Jan. 12, 2017); Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014 ("[T]he court may presume that an absent defendant who has failed to answer has no meritorious defense because [i]t is not the court's responsibility to research the law and construct the parties' arguments for them.").

Nevertheless, Plaintiff anticipates that because she attended a police trial on July 18, 2023, Defendant will state that she had proper notice. Defendant never provided Plaintiff with notice of the charges. See Compl. at ¶129.  Plaintiff was known to be disabled but Defendant harassed her into providing multiple proofs of her disability and medications.  Other officers with cancer and on heavier medication were not treated as harshly as Plaintiff.  Despite providing multiple prescription documents and Defendant raiding Plaintiff's doctor's office she was still brought up on charges of making false statements and disobedience without proper notice and without Defendant following its own progressive discipline matrix.

Accordingly, this factor also weighs heavily in favor of entry of default judgment.

### c. Defendant's Delay is Due to Culpable Conduct

"Where a defendant completely fails to 'engage[] in the litigation process and ha[s] offered no reason for this failure or refusal,' this may "qualif[y] as culpable conduct with respect to the entry of a default judgment.'" See Russell v. Mimi's Café & Mkt., 2023 U.S. Dist. LEXIS 5549, at *7 (E.D. Pa. Jan. 9, 2023) (quoting E. Elec. Corp. v. Shoemaker Constr. Co., 657 F. Supp. 2d

8

545, 554 (E.D. Pa. 2009)); see also Joe Hand Promotions, Inc. v. Waldron, 2013 U.S. Dist. LEXIS 34567, at *13 (D.N.J. Mar. 13, 2013) ("Defendants' failure to respond permits the Court to draw an inference of culpability on their part.").

Here, Defendant completely failed to engage in the litigation process, much less file a response to Plaintiff's Complaint. Accordingly, the Court may draw an inference of culpability on their part. This factor also weighs in favor of entry of default judgment.

Accordingly, for the foregoing reasons, the entry of default judgment against Defendant is warranted and should be granted.

## C. Damages and Amount of Judgment Requested

When evaluating the extent of damages on a motion for default judgment, the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant. See Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994) (stating that, if necessary, the court may hold a hearing to assess damages); Amresco Fin. I L.P. v. Storti, 2000 U.S. Dist. LEXIS 3103, at *4 (E.D. Pa. Mar. 10, 2000) (noting that the entry of default judgment with an award of damages is proper when such an award can be ascertained from detailed figures in evidence and affidavits).

### 1. Plaintiff's Sworn Declaration Supports Her Damages Calculation

In accordance with the Court's instructions, Plaintiff has provided a sworn declaration which addresses each of these items. See generally Ciesla Decl., Exhibit A. In relevant part, Plaintiff therein supplements the detailed information contained in the Complaint with the following averments under penalty of perjury:

- In May of 2018, I was selected to become a Newark, New Jersey police officer. (Ex. A at ¶ 2).
- I entered the police academy in August of 2018. (Id. at ¶ 3).

9

- I graduated from the police academy in December of 2018. (Id. at ¶ 4).
- As a result of my position as a Newark police officer, I had a property interest in my employment under the Fourteenth Amendment of the United States Constitution. (Id. at ¶ 5).
- After graduation I was assigned to 1 Lincoln Avenue and was selected as the Class Leader. (Id. at ¶ 6).
- In the winter of 2019, I received a commendation award from the training division and was selected as class leader for all of the work that I did. (Id. at ¶7).
- Since graduating from the police academy, I had the privilege of being a part of several different communities in Newark, specifically by being in patrol in the 7th, 4th and 5th Precincts. (Id. at ¶ 8).
- Throughout my employment I suffered through sexual harassment, disability discrimination, and a wrongful termination. (Id. at ¶ 10).
- Throughout my employment, Defendant did not follow procedures which led to end of my employment. (Id. at ¶ 11).
- Defendant accused me of falsifying medical records.   (Id. at ¶ 12).
- They harassed me and my doctors regarding a prescription that was fully disclosed. (Id. at ¶ 13).
- They harassed me for months regarding the prescription and did not provide me with official charges.   (Id. at ¶ 18).
- I did not have an opportunity to present evidence during the trial and Defendant did not even review the evidence against me.  (Id. at 19).
- The continuing harassment caused me severe stress and anxiety.  (Id. at ¶ 20)
- My disability was so overwhelming that I committed myself to a hospital on or about February 23 or 24, 2024.   (Id. at ¶ 21).
- I was only at Barnabas for one day before I transferred to Newark Beth Israel ("NBI"). (Id. at ¶ 22).
- Two high ranking IA officials Lt Baker and Deputy Chief Jose Gonzales officers came and interrogated me during my mental health crisis at Barnabas without union representation. (Id. at ¶ 23).
- I stayed for twelve (12) days at NBI before I was released and was set up with an outpatient program. (Id. at ¶ 24).
- On March 8, 2024, Captain Anthony Rawa, the supervisor for Newark's Medical Services Unit, contacted me and advised me that due to being booked with stress I would have to complete a fitness for duty assessment. (Id. at ¶ 25).
- Shortly thereafter Rawa said that since the department conducted two welfare checks on me and both times I was not home that I was considered AWOL and therefore, they were sending me for a fitness for duty. (Id. at ¶ 26).
- Defendant sent officers to my home when they knew I was in the hospital and was booked off for stress. (Id. at 27).
- The department policy is that once an officer books off, he/she will remain off until they call and book back on. (Id. at ¶ 28).
- This is another example of Defendant not following proper procedures when it involved me. (Id. at ¶ 29)
- I applied for a sergeant position on May 2, 2024.   (Id. at ¶ 31).

10

- At the time of my application, I was ranked No. 1 on the sergeant's list. (Id. at ¶ 32).
- I reapplied on May 28, 2024, but received no response despite AG guidelines stating the opposite should happen. (Id. at ¶ 33).
- Written notes from both High Focus and my psychiatrist Vasilli were given to Captain Rawa every month. Defendant had notice of my disability and treatment. (Id. at ¶ 34).
- June 20, 2024, I submitted another 1001 to Captain Rawa, requesting a written response to confirm that I had been passed over as sergeant. (Id. at ¶ 35).
- On July 31, 2024, Defendant advised me that I was, "Unfit for duty/ not restorable," as per Dr. Sarah Pachner. (Id. at ¶ 36).
- Newark conducted the evaluation without consulting my treating psychiatrist or therapist. (Id. at ¶ 37).
- Newark made this determination shortly after my hospitalization. (Id. at ¶ 38).
- I was provided with no opportunity for stabilization or continued treatment progress. (Id. at ¶ 39).
- I received no reassessment after compliance with treatment. (Id. at ¶ 40).
- Newark denied me access to the fitness for duty final report. (Id. at ¶ 41).
- Captain Rawa said that due to the circumstances, I qualified for early retirement and could get 40% of my pension. (Id. at ¶ 42).
- September 5, 2024, I forcibly resigned from the department. (Id. at ¶ 43).
- During my employment with Newark, I experienced the following distress that continues to this day: (Id. at ¶ 45).
  Persistent anxiety and elevated stress levels
  Sleep disruption and insomnia
  Hypervigilance and difficulty relaxing
  Intrusive thoughts related to the investigation and workplace events
  Difficulty concentrating and mental fatigue
  Feelings of fear and uncertainty regarding employment status and reputation
  Depression
  Attempted suicide in October 2024.

## 2. Plaintiff's Damages Calculation and Judgment Request

Based on the aforementioned, Plaintiff seeks a default judgment against Defendant of $10,219,860.00, based on the following:

- At the time of my termination, I was paid a salary of ninety-eight thousand dollars ($98,000). This was prior to overtime. See Ciesla Decl. at Ex. A at ¶ 50.
- Defendant terminated me during my sixth year of employment. I was contracted to stay for a total of thirty years to receive full medical. I intended on completing my contract. (Id. at ¶ 51).
- The overtime I lost during my time de-gunned was forty-four thousand eight hundred ($33,000.00) because I routinely worked three to four overtime shifts per

11

week.  Defendant took my gun on April 26, 2023, and I did not get it back until September 2023.  (Id. at ¶ 52).

- I was hospitalized in February of 2024 due to stress induced anxiety.  (Id. at ¶ 53).
- During this time, I missed out on my normal three to four shifts of overtime per week.  This is valued at forty-four thousand eight hundred dollars ($44,800.00). (Id. at ¶ 54).
- I routinely worked three to four shifts of overtime per week.  From the time of my termination to today that number is one hundred twenty-one thousand six hundred eighty dollars ($121,680.00). (Id. at ¶ 55).
- My overtime losses projected for the next twenty-four years is one million nine hundred forty-six thousand eight hundred and eighty dollars ($1,946,880.00). (Id. at ¶ 56).
- My pension losses are two million five hundred seventy-three thousand five hundred dollars ($2,573,500.00). (Id. at ¶ 57).
- My salary as a sergeant for the next twenty-four years would be three million dollars ($3,000,000.00).  (Id. at ¶ 58).
- Due to the stress, depression, and anxiety caused by Defendant I have been hospitalized several times, I am on medication for depression and anxiety, I lost my career, and I attempted suicide.  I am asking for two million five hundred thousand dollars ($2,500,000.00) for emotional distress damages. (Id. at ¶ 59).

## III.    CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that default judgment be entered in her favor and against Defendant Newark in the amount set forth above, or, alternatively, in an amount to be determined by the Court at a hearing regarding damages.

Dated:  April 7, 2026
        Lake Success, New York

                                        Respectfully submitted,

                                        ABRAMS FENSTERMAN LLP

                                        *John C. Luke, Jr.*
                                        John C. Luke, Jr.
                                        *Attorneys for Plaintiff*

12